UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

JEYSON SANTIAGO,

                              Plaintiff,                    **OPINION AND ORDER**

              -against-                                      21 Civ. 764 (AEK)

CITY OF YONKERS, BRIAN McCORMACK,
THOMAS SABOL, and
JOHN OR JANE DOE 1-10,

                              Defendants.
------------------------------------------------------------x

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.**[1]

        Plaintiff Jeyson Santiago brings this action against the City of Yonkers, Yonkers Police

Officers Brian McCormack and Thomas Sabol, and John or Jane Doe 1-10 ("Defendants"),

asserting various federal and state law causes of action arising out of his arrest on March 15,

2019, including claims for unlawful search and seizure, false arrest and false imprisonment,

assault and battery, excessive force, malicious prosecution, malicious abuse of process, denial of

the right to a fair trial, deprivation of rights and denial of equal protection, conspiracy to interfere

with civil rights and failure to prevent conspiracy, failure to intervene, and negligent hiring.  ECF

No. 24 ("Amended Complaint" or "Am. Compl.").  Currently before the Court is Defendants'

motion for summary judgment.  ECF Nos. 26 ("Notice of Motion"), 28 ("Memorandum of Law"

or "Defs.' Mem.").  For the reasons that follow, Defendants' motion is GRANTED IN PART

and DENIED IN PART.

---

[1] The parties have consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c).
ECF No. 15.

I.   **BACKGROUND**

A.   **Factual Background**

The following facts are undisputed unless otherwise noted and are taken from

Defendants' Rule 56.1 Statement, ECF No. 29 ("Defs.' 56.1 Statement"), Plaintiff's Response to

Defendants' Rule 56.1 Statement, ECF No. 35 ("Pl.'s 56.1 Resp."), and the exhibits submitted by

the parties.

Shortly after midnight on the morning of March 15, 2019, Plaintiff was driving a friend's

vehicle in Yonkers, New York, which is located in southern Westchester County.  Defs.' 56.1

Statement ¶ 1.  Plaintiff worked as a delivery driver for Door Dash and had been working that

evening, beginning around 11:00 p.m. on March 14, 2019.  ECF No. 27 ("McCormick Decl.")

Ex. K ("Santiago Dep.") at 7:6-18, 9:6-16.  At approximately 12:40 a.m., Plaintiff drove the

wrong way down a one-way segment of North Broadway in Yonkers and upon realizing his

mistake, attempted to make an illegal U-turn.  Defs.' 56.1 Statement ¶¶ 1-3; Pl.'s 56.1 Resp. ¶¶

1-3; Santiago Dep. at 11:20-12:4.  Police Officers Sabol and McCormack (the "Officers") had

been driving behind Plaintiff for approximately 30 seconds to one minute before they observed

the traffic infractions.  McCormick Decl. Ex. L ("McCormack Dep.") at 19:10-20:7.  Before

Plaintiff could complete the U-turn, the Officers activated their overhead lights, pulled up

perpendicular to Plaintiff's vehicle, exited their patrol car, and approached Plaintiff.  Defs.' 56.1

Statement ¶ 3; Pl.'s 56.1 Resp. ¶ 2A; McCormack Dep. at 19:19-23; ECF No. 39-1 ("Sabol

Dep.") at 29:5-24.

After approaching the vehicle, the Officers asked Plaintiff for his driver's license, which

Plaintiff provided to McCormack.  Defs.' 56.1 Statement ¶ 3.  Defendants assert that the Officers

subsequently became aware of an active warrant for Plaintiff's arrest related to a misdemeanor

charge from the previous year of operating a motor vehicle while impaired by drugs.[2]  Defs.'
56.1 Statement ¶ 4.  The circumstances of how the Officers allegedly became aware of the
warrant, however, are not clear from the record.  McCormack testified at his deposition that he
and Sabol learned of the warrant after "running Plaintiff's driver's license"—*i.e.*, using
Plaintiff's driver's license information to verify and/or check for additional information about
Plaintiff.  *See* McCormack Dep. at 25:6-22.  McCormack explained that after running the
license, he was "notified by our headquarters that Mr. Santiago had an active arrest warrant out
of Westchester County."  *Id.* at 25:16-22, 27:3-8.  Sabol testified similarly at his deposition,
stating that "we did a driver's license inquiry and ran the vehicle, at which point we were advised
by headquarters that Mr. Santiago had a warrant out of Westchester County."  Sabol Dep. at
31:9-14.  But these accounts appear to be inconsistent with reports prepared by the Officers in
the immediate aftermath of the arrest, in which the Officers separately stated that they learned of
the warrant via a database search, rather than from a communication with "headquarters."  Sabol
completed an incident report, dated March 15, 2019, in which he wrote that after stopping
Plaintiff, "[t]he assigned ran an eJustice inquiry which showed (SA) Santiago to have an active
warrant out of Westchester County Police for DWI Drugs (#18-1093)."  McCormick Decl. Ex. A
at 3.  Sabol's report also notes, following a narrative regarding Plaintiff being transported by
other Yonkers police officers to central booking, that "Westchester County Police [were]
contacted and warrant [was] confirmed by Officer Stretz."  *Id.*; Defs.' 56.1 Statement ¶ 4;

---

[2] Although Plaintiff states that this portion of Defendants' 56.1 Statement is
"undisputed," *see* Pl.'s 56.1 Resp. ¶ 4A, much of Plaintiff's opposition submission is devoted to
the argument that there are issues of fact concerning when, if ever, the Officers became aware of
an active arrest warrant, *see* ECF No. 33 ("Pl.'s Mem.") at 20-21, 33, 37.  Accordingly, the Court
treats this issue—whether and when the Officers learned of an active arrest warrant—as disputed
for purposes of deciding this motion.

McCormack Dep. at 27:3-8.  Meanwhile, in in a use of force report completed on March 15, 2019, McCormack wrote that Plaintiff "was found to have an active arrest warrant out of Westchester County via a [New York State Police Information Network ("NYSPIN")] Inquiry." McCormick Decl. Ex. B at 2.

What transpired after the Officers ran Plaintiff's license is also disputed.  Defendants maintain that McCormack and Sabol requested that Plaintiff exit the vehicle, and once Plaintiff was outside of the vehicle, advised him that they were placing him under arrest pursuant to the outstanding arrest warrant.  Defs.' 56.1 Statement ¶ 5; McCormack Dep. at 25:20-25, 26:8-13, 31:4-7; Sabol Dep. at 33:12-20.  According to Defendants, after informing Plaintiff that he was under arrest, Sabol managed to apply handcuffs to one of Plaintiff's wrists, but could not secure both wrists because Plaintiff pulled his arms in front of his body.  Defs.' 56.1 Statement ¶ 6; McCormack Dep. at 31:13-21, 33:21-34:12; Sabol Dep. at 33:21-34:7.  Defendants assert that thereafter, Plaintiff attempted to flee, and in doing so dragged the Officers with him.  Defs.' 56.1 Statement ¶ 7; McCormack Dep. at 39:10-21; Sabol Dep. at 34:13-35:18.  To prevent Plaintiff from running away, McCormack struck Plaintiff twice in the back of his right leg with McCormack's right knee, causing Plaintiff, McCormack, and Sabol all to fall to the ground.  Defs.' 56.1 Statement ¶ 7; McCormack Dep. at 39:10-21; *see* Sabol Dep. 36:22-37:9.

Plaintiff's account differs.  Plaintiff maintains that after he exited the car, the Officers did not inform him of any arrest warrant, but instead, immediately and without explanation began twisting his arms behind his back.  Pl.'s 56.1 Resp. ¶ 6A; Santiago Dep. at 15:12-17, 16:24-18:19.  Plaintiff testified at his deposition that the Officers continued grabbing his arms and struggling for "more than a minute" before he was thrown to the ground, where he landed on his stomach.  Santiago Dep. at 22:4-8, 23:9-19.  Plaintiff denies that he ever attempted to flee.  Pl.'s

56.1 Resp. ¶ 7A; Santiago Dep. at 21:24-22:3.  According to Plaintiff, while he was on the ground, the Officers kicked him in his face and punched him in his face, legs, and stomach. Santiago Dep. at 24:12-25:5.  When asked by Defendants' counsel about "how long . . . this beating" lasted, Plaintiff stated that it lasted for approximately four minutes, and that during that time he was kicked in the face approximately three times and punched in the face approximately three times.  *Id.* at 25:6-13, 27:4-8.

There is no dispute that eventually the Officers placed handcuffs around Plaintiff's wrists, and that after he was handcuffed, there was no further use of force by the Officers.  Defs.' 56.1 Statement ¶ 8; Santiago Dep. at 27:13-22.  Once in custody, Plaintiff was transported to central booking in a patrol car by two other Yonkers police officers.  Defs.' 56.1 Statement ¶ 9. According to Plaintiff, he requested medical attention when he was being transported from the scene of the arrest.  Santiago Dep. at 30:15-31:9.

A "booking data sheet" submitted by Defendants shows that Plaintiff was booked by the Yonkers Police Department at 2:00 a.m. on March 15, 2019 on charges of resisting arrest and obstructing governmental administration.[3]  McCormick Decl. Ex. G.  Photographs of Plaintiff's face taken during the booking process do not show any obvious injuries to Plaintiff's face. Defs.' 56.1 Statement ¶ 9; *see* McCormick Decl. Ex. F.  Plaintiff remained in custody for approximately 12 hours, and he did not receive any medical attention while in custody.  Defs.' 56.1 Statement ¶¶ 9, 11; Santiago Dep. at 36:11-13.

---

[3] Defendants maintain that Plaintiff was also charged in connection with an outstanding misdemeanor warrant.  *See* Defs.' 56.1 Statement ¶ 11.  But Plaintiff's booking records do not show that he was arrested pursuant to a warrant, *see* McCormick Decl. Ex. G, and there are no charges based on any warrant included in the criminal misdemeanor information signed by McCormack, *see* ECF No. 34 ("Raquib Decl.") Ex. 1.  Defendants cite to the incident report drafted by Sabol on March 15, 2019, which references "[w]arrant [e]xecution outside misdemeanor," but this report is not a charging document.  *See* McCormick Decl. Ex. A.

After he was released from jail later in the day on March 15, 2019, Plaintiff went to the emergency department of St. John's Riverside Hospital in Yonkers.  Santiago Dep. at 36:14-37:23; *see* Raquib Decl. Ex. 3.  At the hospital, Plaintiff received an x-ray and was treated for a sprained wrist.  Santiago Dep. at 38:7-15; Raquib Decl. Ex. 3.  Medical records reflect that in addition to the sprain, Plaintiff was treated for "contusion of multiple sites."  Raquib Decl. Ex. 3.  Plaintiff was given Naprosyn and Ibuprofen for pain and Cyclobenzaprine for any spasms, and was directed to wear an ace bandage, which Plaintiff wore for approximately three weeks following the incident.  *Id.* at 1-2; Santiago Dep. at 38:19-40:4.

On June 14, 2021, the Yonkers City Court dismissed all criminal charges against Plaintiff pursuant to a motion to dismiss and N.Y. Criminal Procedure Law § 160.50.  Defs.' 56.1 Statement ¶ 11; Raquib Decl. Ex. 2.

* * * * * * * * * *

In connection with their motion for summary judgment, Defendants submitted a copy of a warrant bearing court docket number 18-1093, issued on March 23, 2018 by the Yonkers City Court for a violation of New York Vehicle and Traffic Law section 1192.4, which prohibits the operation of a motor vehicle while impaired by drugs.  McCormick Decl. Ex. D.  Defendants also submitted Plaintiff's RAP sheet,[4] in which Plaintiff is described as a 5'09" tall Hispanic man weighing 220 pounds.  McCormick Decl. Ex. E at 1.  Under a section of the RAP sheet with the heading "Cycle 1," the RAP sheet notes that on March 1, 2018, Plaintiff was arrested and charged with operating a motor vehicle while impaired by drugs (*i.e.*, a violation of New York Vehicle and Traffic Law section 1192.4), unlawful possession of marijuana, driving without a

---

[4] The term "RAP sheet" refers to an individual's record of arrests and prosecutions (RAP).  *See, e.g.*, *United States v. Gumora*, 454 F. Supp. 3d 280, 284 (S.D.N.Y. 2020).

seat belt, and driving with nontransparent side windows. *Id.* at 3-4. Also within the section

labeled "Cycle 1," is a subsection with the heading "Court Case Information" and "Case

Number: 18-1093," the RAP sheet indicates that on December 7, 2018, Santiago was arraigned

on the four charges for which he was arrested on March 1, 2018; this subsection also includes the

notation "Bench Warrant Vacated" on December 7, 2018. *Id.* at 4-5. In the final section of the

RAP sheet, under the heading "Wanted Information," there is an indication that an individual

named "Joseph A. Santiago" was wanted by the Camillus Town Police Department[5] on a

misdemeanor charge of criminal contempt in the second degree, and that an arrest warrant was

issued for "Joseph A. Santiago" on February 4, 2019. *Id.* at 5-6. According to information in the

RAP sheet, Joseph A. Santiago is 6'00" tall and weighs 130 pounds. *Id.* There is a warning

immediately below the "Wanted Information" heading that reads: "**CAUTION: Wanted results

are based on a comparison of Name, Physical and Numeric Descriptors, and not on a

comparison of Fingerprints.**" *Id.* (bold in original). Defendants cite to this portion of

Plaintiff's RAP sheet to support their statement that Plaintiff's March 2018 arrest warrant "was

reissued on February 4, 2019, slightly over a month prior to the subject incident." *See* Defs.'

56.1 Statement ¶ 4.[6] It is not clear why Defendants would describe the February 4, 2019 warrant

has having been "reissued"—or related at all to the March 2018 warrant associated with

Plaintiff—given that the February 4, 2019 warrant was from a different jurisdiction, for a

---

[5] The town of Camillus, New York is located in Onondaga County, in the vicinity of Syracuse, New York, and is approximately 260 miles from Yonkers. *See* McCormick Decl. Ex. E at 5.

[6] Though Plaintiff does not specifically dispute this assertion, *see* Pl.'s 56.1 Resp. ¶ 4A, the Court deems this fact as disputed for the reasons discussed in footnote 2, *supra*.

different crime, and for an individual with a different name, different date of birth, and different

height and weight.  *See* McCormick Decl. Ex. E.

**B.      Procedural History**

Plaintiff initiated this action on January 27, 2021, ECF No. 1, and filed the operative

Amended Complaint on April 27, 2022, Am. Compl.  Defendants moved for summary judgment

on May 6, 2022.  ECF Nos. 26-29.  Plaintiff filed his opposition to Defendants' motion on June

17, 2022, ECF Nos. 33-35, and Defendants submitted their reply declaration on July 1, 2022,

ECF No. 36 ("Defs.' Reply").

**II.    LEGAL STANDARD**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be

granted "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp.

v. Catrett*, 477 U.S. 317, 320-23 (1986).  A dispute about a material fact is genuine "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine

issue of material fact exists, a court is required to "constru[e] the evidence in the light most

favorable to the nonmoving party and draw[] all reasonable inferences in its favor."  *Mount

Vernon Fire Ins. Co. v. Belize NY, Inc.*, 277 F.3d 232, 236 (2d Cir. 2002); *Farias v. Instructional

Sys., Inc.*, 259 F.3d 91, 97 (2d Cir. 2001); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 764

(2d Cir. 1998); *see also Anderson*, 477 U.S. at 261 n.2.  A party cannot overcome summary

judgment by relying on "mere speculation or conjecture as to the true nature of the facts"

because "conclusory allegations or denials" cannot "create" genuine disputes of material fact

"where none would otherwise exist."  *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010)

(quotation marks omitted).  Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]"  *Anderson*, 477 U.S. at 255; *accord Williams v. N.Y.C. Housing Auth.*, 61 F.4th 55, 76 (2d Cir. 2023).  "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted."  *Cruden v. Bank of N.Y.*, 957 F.2d 961, 975 (2d Cir. 1992) (citing *H.L. Hayden Co. v. Siemens Med. Sys. Inc.*, 879 F.2d 1005, 1011 (2d Cir. 1989)).

## III.    DISCUSSION

The Amended Complaint contains eighteen claims brought under both state and federal law.[7]  *See* Am. Compl. ¶¶ 48-166.  Defendants have moved for summary judgment as to each claim.  The Court considers each of Defendants' arguments in turn.

### A.    False Arrest and False Imprisonment (Claims Three and Four)

Defendants seek dismissal of Plaintiff's claims for false arrest and false imprisonment on the ground that the Officers had probable cause to arrest Plaintiff in the early morning of March 15, 2019.  *See* Defs.' Mem. at 2-4.  A 42 U.S.C. § 1983 claim for false arrest is "substantially the same as a claim for false arrest under New York law."  *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013); *see Hershey v. Goldstein*, 938 F. Supp. 2d 491, 515 (S.D.N.Y. 2013) ("Under New York law, false arrest and false imprisonment are one and the same, and the elements for both are the same as for a false arrest claim under § 1983.").  "To state a claim for false arrest under New York law, a plaintiff must show that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent

---

[7] With the exception of Plaintiff's negligent hiring claim, which is asserted solely against the City of Yonkers, Plaintiff's state claims are asserted as to Defendants generally, whereas his federal claims are asserted only as to the individual defendants.  *See* Am. Compl. ¶¶ 48-166.

to the confinement, and (4) the confinement was not otherwise privileged." *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003) (quotation marks omitted). "[T]he existence of probable cause is an absolute defense to a false arrest claim." *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006). "[S]ummary judgment dismissing a plaintiff's false arrest claim is appropriate if the undisputed facts indicate that the arresting officer's probable cause determination was objectively reasonable. If, however, . . . the officer's reasonableness depends on material issues of fact, then summary judgment is inappropriate for both New York and federal false arrest claims." *See Jenkins v. City of New York*, 478 F.3d 76, 88 (2d Cir. 2007) (citation omitted).

### 1. Probable Cause—Legal Standard

"An officer has probable cause to arrest when he or she has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Abreu v. Romero*, 466 F. App'x 24, 26 (2d Cir. 2012) (summary order) (quoting *Jaegly*, 439 F.3d at 152). The Supreme Court has "rejected the view that probable cause to arrest must be predicated upon the offense invoked by the arresting officer, or even upon an offense 'closely related' to the offense invoked by the arresting officer, and stated that the 'subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.'" *Jaegly*, 439 F.3d at 153 (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)). The same is true under New York law: "probable cause 'does not require an awareness of a particular crime, but only that some crime may have been committed.'" *Ackerson v. City of White Plains*, 702 F.3d 15, 20 (2d Cir. 2012) (*per curiam*) (quoting *Wallace v. City of Albany*, 283 A.D.2d 872, 872 (3d Dep't 2001)). To assess whether an officer had probable cause for an arrest, courts

"examine the events leading up to the arrest and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (quotation marks omitted). This analysis focuses on "the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007) (quoting *Devenpeck*, 543 U.S. at 152). Whether or not probable cause to arrest exists "may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).

### 2.  Probable Cause Based on Active Arrest Warrant

The thrust of Defendants' argument is that the Officers had probable cause to arrest Plaintiff based on an outstanding warrant.[8] *See* Defs.' Mem. at 4. To succeed on this argument at summary judgment, Defendants must establish that the Officers had reason to believe an outstanding warrant existed at the time of the arrest. *United States v. Miller*, 265 F. App'x 5, 7 (2d Cir. 2008) (summary order) ("When an officer learns . . . that a person is the subject of an outstanding arrest warrant, probable cause exists to arrest that person."); *Vasquez v. Maloney*, No. 15-cv-8848 (NSR), 2020 WL 1309989, at *8-9 (S.D.N.Y. Mar. 19, 2020) (declining to find officers had probable cause to detain plaintiff based on outstanding warrant where police officers speculated that the plaintiff was "possibly wanted on some felonies," but no evidence existed

---

[8] Defendants also state that the Officers "thereafter had probable cause to arrest plaintiff for the additional charges of resisting arrest and obstructing governmental administration on the basis of [P]laintiff's actions to avoid arrest." Defs.' Mem. at 4. Attempting to avoid arrest, however, is not a sufficient standalone basis to effect a lawful arrest in the absence of a valid basis for the arrest that prompted the alleged resistance. *Murphy v. Lynn*, 118 F.3d 938, 948 (2d Cir. 1997) ("as a matter of law, an arrest for resisting arrest is not lawful unless the arrest that was supposedly resisted was itself authorized, either by way of an arrest warrant or by the existence of probable cause").

that officers were actually aware of a valid arrest warrant at the time of detention).  Viewing the evidence in the light most favorable to Plaintiff, there are genuine issues of material fact as to what the Officers knew about the purported existence of an arrest warrant for Plaintiff and when they knew it, and accordingly, the Court cannot determine as a matter of law that there was probable cause to arrest Plaintiff on the basis of an active arrest warrant.[9]

Although both Officers testified at deposition that they were aware of an outstanding warrant at the time of the arrest and told Plaintiff as much, their deposition accounts are contradicted by the reports they authored in the immediate aftermath of the arrest, by Plaintiff's testimony, and by other evidence in the record.  McCormack testified that after running Plaintiff's driver's license he "was *notified by our headquarters* that Mr. Santiago had an active arrest warrant out of Westchester County."  McCormack Dep. at 25:13-22 (emphasis added); *id.* at 29:12-15 (explaining he "ran at first to the headquarters through the department radio and then they advised me to contact the radio room via their phone number").  Sabol likewise testified that the Officers "did a driver's license inquiry and ran the vehicle, at which point [they] were *advised by headquarters* that Mr. Santiago had a warrant out of Westchester County."  Sabol Dep. at 31:9-14 (emphasis added).  But in the reports prepared by the Officers on the day of Plaintiff's arrest, they stated that they learned of the warrant through their own database searches.  Sabol wrote in the incident report that he "ran an eJustice inquiry which showed (SA)

---

[9] Defendants did not raise the alternative argument that the Officers separately may have had probable cause to arrest Plaintiff based on the traffic violation that Plaintiff admits he committed on March 15, 2019.  Though Plaintiff made various points about the Officers' basis for stopping Plaintiff for the traffic violation, this additional potential basis for probable cause for arrest was (understandably) not squarely addressed in Plaintiff's opposition submission.  Accordingly, the Court does not address the merits of this alternative theory as to probable cause for arrest at this time, but the parties should be prepared to discuss this point further at the next scheduled pretrial conference.

Santiago to have an active warrant out of Westchester County Police for DWI Drugs (#18-1093)." McCormick Decl. Ex. A at 3. McCormack's report stated that the Officers learned of the arrest warrant "via a NYSPIN Inquiry." McCormick Decl. Ex. B. This conflicting evidence concerning how the officers came to learn of the warrant—whether through their own database inquiries or via communications with Yonkers police headquarters—leaves an open and material question as to when and how the Officers actually learned of any warrant.[10] Moreover, Plaintiff testified that, contrary to the Officers' recollections, neither officer ever mentioned a warrant during the course of his arrest. Santiago Dep. at 15:12-17, 16:24-18:19. Taken together, these discrepancies amount to a material issue of fact as to whether the Officers were aware of an outstanding arrest warrant at the time of Plaintiff's arrest.

In addition, the only evidence that an active warrant for Plaintiff's arrest actually existed in the early morning hours of March 15, 2019 is Defendants' own statements—there is no objective evidence of such an outstanding warrant. While there was a warrant issued for Plaintiff's arrest by the Yonkers City Court on March 23, 2018 in connection with conduct for which he previously was arrested on March 1, 2018, that warrant appears to have been satisfied by Plaintiff's December 7, 2018 court appearance to face those charges. Plaintiff's RAP sheet indicates that a bench warrant associated with that matter was vacated that same day, more than three months prior the arrest that gave rise to this lawsuit. *See* McCormick Decl. Ex. E at 5-6. Notably, the March 23, 2018 warrant, December 7, 2018 arraignment, and the December 7, 2018

---

[10] Defendants are similarly inconsistent in their submissions in support of the motion for summary judgment. In their Rule 56.1 Statement, Defendants state that "[t]he officers ran an eJustice inquiry, which revealed that plaintiff had an active warrant emanating from an arrest by the Westchester County Police on the charge of DWI-Drugs." Defs.' 56.1 Statement ¶ 4. But in their memorandum of law, Defendants maintain that the Officers "had probable cause to arrest plaintiff for his outstanding arrest warrant after being advised of the warrant by a Yonkers Police Department dispatcher." Defs.' Mem. at 4.

notation about a vacated bench warrant are all associated with court docket number 18-1093, the same court docket number as the warrant identified by Defendants as the warrant that was active for Plaintiff on March 15, 2019.  *Compare id.* at 5-6 (RAP Sheet), *with* McCormick Decl. Ex. D (Mar. 23, 2018 arrest warrant); *see* Defs.' 56.1 Statement ¶ 4 (citing to Ex. D as an "active warrant").  The document cited by Defendants in their Rule 56.1 Statement for the proposition that "Plaintiff's arrest warrant was reissued on February 4, 2019, slightly over a month prior to the subject incident," Defs.' 56.1 Statement ¶ 4, refers to a warrant that, on its face, appears completely unrelated to Plaintiff or to any charges connected with Plaintiff's March 2018 arrest. The February 2019 warrant is for a man named "*Joseph* Santiago," whose birthdate and physical description do not match Plaintiff's, and that warrant relates to a misdemeanor criminal contempt charge from Onondaga County, not Westchester County.  McCormick Decl. Ex. E at 5.  This documentary evidence also raises questions regarding the Officers' testimony that they received information from "headquarters" about an active warrant for Plaintiff, and Sabol's written statement that he confirmed the existence of an active warrant with an individual named "Officer Stretz" (who was never deposed in connection with this action) of the Westchester County Police later on the day of Plaintiff's arrest.  *See* McCormack Dep. at 25:16-22, 27:3-8; Sabol Dep. at 31:9-14; McCormick Decl. Ex. A at 3; Defs.' 56.1 Statement ¶ 4.

Even if there was no active warrant for Plaintiff, the Officers nevertheless could have had probable cause to arrest Plaintiff if they had the mistaken belief, based on erroneous information, that an active warrant for Plaintiff existed.  The Second Circuit has held on at least two occasions that even an "erroneous NYSPIN alert for an outstanding arrest warrant is sufficient to create probable cause." *Pierre v. City of New York*, 860 F. App'x 14, 16 (2d Cir. 2021) (summary order) (citing *Miller*, 265 F. App'x at 7; *United States v. Santa*, 180 F.3d 20, 27 (2d Cir. 1999)).

But the only evidence that the Officers received any information about any warrant—whether the warrant was valid or not—are the Officers' own statements, which, as set forth above, are inconsistent as to how they became aware of the arrest warrant.  Because what the Officers knew and when turns, in part, on credibility determinations as to the accounts of the Officers and the account of Plaintiff, summary judgment on these claims is not appropriate.  Accordingly, Defendants' motion for summary judgment is DENIED as to Plaintiff's claims for false arrest and false imprisonment.

**B.      Unlawful Search and Seizure (Claims One and Two)**

Defendants likewise maintain that they are entitled to summary judgment on Plaintiff's claims for unlawful search and seizure because they had probable cause to arrest Plaintiff on March 15, 2019.  Defs.' Mem. at 5.  In other words, Defendants assert that any search here was justified as a search performed incident to a lawful arrest.

The Fourth Amendment to the U.S. Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]"  U.S. Const. amend. IV.  "Typically, a search requires a warrant in order to be reasonable under the Fourth Amendment; however, the search-incident-to-arrest doctrine is an exception to the Fourth Amendment's warrant requirement."  *Taylor v. City of New York*, No. 19-cv-6754 (KPF), 2022 WL 744037, at *17 (S.D.N.Y. Mar. 11, 2022) (citing *United States v. Diaz*, 854 F.3d 197, 205 (2d Cir. 2017)).  Under this doctrine, a "lawful arrest itself establishes the legality of the search, which means that an unlawful search claim turns on the existence of probable cause" for the underlying arrest.  *Id.* (citing *United States v. Robinson*, 414 U.S. 218, 235 (1973)).

For the reasons already provided, there are issues of fact as to whether the Officers had probable cause to arrest Plaintiff based on an outstanding arrest warrant.  Therefore, Defendants'

15

motion as to Plaintiff's claims of unlawful search and seizure is DENIED for the same reasons set forth in Section III.A, *supra*.

### C.     Malicious Prosecution (Claims Seven and Eight)

Defendants contend that Plaintiff's state and federal claims for malicious prosecution also should be dismissed based on the existence of probable cause.  Defs.' Mem. at 4-5.  "In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law."  *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010) (citations omitted).  "To establish a malicious prosecution claim under New York law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor;[11] (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions."  *Id.* at 161 (quotation marks omitted).  "[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York[.]"  *Id.* at 161-62 (quotation marks

---

[11] The Supreme Court recently clarified that "[t]o demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction." *Thompson v. Clark*, 142 S. Ct. 1332, 1335 (2022) (holding plaintiff could bring a claim for malicious prosecution where "charges were dismissed before trial without any explanation by the prosecutor or judge").  Under New York State law, "'any termination of a criminal prosecution, such that the criminal charges may not be brought again, qualifies as a favorable termination, so long as the circumstances surrounding the termination are not inconsistent with the innocence of the accused.'"  *Goldenberg v. Cap. One Nat'l Assoc.*, 186 A.D.3d 810, 811 (2d Dep't 2020) (quoting *Cantalino v. Danner*, 96 N.Y.2d 391, 395 (2001)).  Here, the criminal charges against Plaintiff stemming from his March 15, 2019 arrest were dismissed pursuant to a motion to dismiss and N.Y. Criminal Procedure Law § 160.50.  Raquib Decl. Ex. 3.  Under both the federal and state standards, the circumstances of this termination are sufficient to satisfy this element of a malicious prosecution claim.  *See Thompson*, 142 S. Ct. at 1335; *Goldenberg*, 186 A.D.3d at 812 (noting that dismissals pursuant to N.Y. Criminal Procedure Law § 160.50 are "in favor of the accused").

omitted).  "The probable cause standard in the malicious prosecution context is slightly higher

than the standard for false arrest cases," *Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013)—

in the malicious prosecution context, "probable cause" means "probable cause to believe that

[the prosecution] could succeed," *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003).

      Plaintiff has not come forward with any evidence that could sustain these causes of action

against Defendant Sabol, and tellingly, only argues in his opposition that the malicious

prosecution claims should go forward as to McCormack.  *See* Pl.'s Mem. at 23-24 (arguing that

"[b]y conferring with the District Attorney's Office and signing the Criminal Complaint,

*Defendant McCormack* initiated the prosecution against Plaintiff." (emphasis added)).  To satisfy

the first element of a malicious prosecution claim against a police officer, the "plaintiff must

show that the officer brought formal charges and had the person arraigned, or filled out

complaining and corroborating affidavits or swore to and signed a felony complaint"; or

"[a]lternatively, an officer initiates a prosecution by creating material, false information and

forwarding that information to a prosecutor or by withholding material information from a

prosecutor."  *Israel v. City of New York*, No. 16-cv-6809 (PGG), 2018 WL 11219076, at *6

(S.D.N.Y. Sept. 29, 2018) (cleaned up); *see also Torres v. Jones*, 26 N.Y.3d 742, 760-61, 767-68

(2016) (explaining that under New York law, "a defendant other than a public prosecutor may be

liable [for malicious prosecution] for supplying false information to the prosecutor in substantial

furtherance of a criminal action against the plaintiff," including, in this case, police officers who

"provided a falsified confession to prosecutors").  There is no dispute that it was McCormack,

not Sabol, who signed the complaint charging Plaintiff with resisting arrest and obstruction of

governmental administration.  Raquib Decl. Ex. 1.  While this act may serve as a basis to satisfy

the first element of the malicious prosecution claims against McCormack, the same cannot be

said for Sabol.  *See Rodriguez v. City of New York*, 291 F. Supp. 3d 396, 406, 414 (S.D.N.Y. 2018) (finding that reasonable jury could conclude that officer who signed criminal complaint initiated proceedings against plaintiff, but that reasonable jury would have no basis to make similar finding as to officer who did not process arrest paperwork, did not interact with prosecutor's office, and merely provided information included in complaint); *Costello v. Milano*, 20 F. Supp. 3d 406, 419 (S.D.N.Y. 2014) (granting summary judgment on malicious prosecution claim as to arresting officer who did not "sign[] a charging instrument, discuss[] [p]laintiff's prosecution with the DA's Office or involving himself in [p]laintiff's prosecution in any other way"). ("

Defendants' argument for summary judgment as to the malicious prosecution claims relies entirely on the notion that the Officers had probable cause to arrest Plaintiff based on an outstanding warrant.  Defs.' Mem. at 5.  But as set forth above, there are genuine issues of material fact as to whether the Officers had any reason to think a valid arrest warrant existed at the time of Plaintiff's arrest, and therefore summary judgment is not warranted as to McCormack and the City of Yonkers on the malicious prosecution claims.  *See Diop v. City of New York*, 50 F. Supp. 3d 411, 421 (S.D.N.Y. 2014) (denying summary judgment on malicious prosecution claim because "the same facts that undermine the existence of probable cause to arrest in this case also undermine the existence of probable cause to prosecute").

Accordingly, Defendants' motion for summary judgment regarding these claims is DENIED as to McCormack and the City of Yonkers.  Plaintiff has not, however, come forward with any evidence to demonstrate any personal involvement by Sabol in initiating the criminal proceeding against Plaintiff, and therefore Defendants' motion for summary judgment as to the malicious prosecution claims is GRANTED as to Sabol.

18

**D.      Excessive Force and Assault and Battery (Claims Five and Six)**

Plaintiff also asserts claims for excessive force and assault and battery against

Defendants.  Am. Compl. ¶¶ 75-84.  "The elements of New York assault and battery and Section

1983 excessive force claims are substantially identical."  *Tardif v. City of New York*, 991 F.3d

394, 410 (2d Cir. 2021) (quotation marks omitted).  Under New York law, "civil assault 'is an

intentional placing of another person in fear of imminent harmful or offensive contact,'" whereas

"[c]ivil battery 'is an intentional wrongful physical contact with another person without

consent.'"  *Id.* (quoting *Charkhy v. Altman*, 678 N.Y.S.2d 40, 41 (1st Dep't 1998)).  "If an arrest

is determined to be unlawful, any use of force against a plaintiff may constitute an assault and

battery, regardless of whether the force would be deemed reasonable if applied during a lawful

arrest."  *Rucks v. City of New York*, 96 F. Supp. 3d 138, 152-53 (S.D.N.Y. 2015) (quotation

marks omitted).  Under both the state and federal standards, "[p]olice officers' application of

force is excessive . . . if it is objectively unreasonable in light of the facts and circumstances

confronting them, without regard to their underlying intent or motivation."  *Maxwell v. City of

New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quotation marks omitted); *see also Nimely v. City

of New York*, 414 F.3d 381, 391 (2d Cir. 2005) (explaining that under New York law, a plaintiff

alleging battery by a police officer must show that the officer's conduct "was not reasonable

within the meaning of the New York statute concerning justification of law enforcement's use of

force in the course of their duties").  This analysis looks to a number of factors, including "the

severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the

officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade

arrest by flight."  *Graham v. Connor*, 490 U.S. 386, 396 (1989); *accord Cugini v. City of New

York*, 941 F.3d 604, 608, 612 (2d Cir. 2019).  "The 'reasonableness' of a particular use of force

must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396; *accord Brown v. City of New York*, 798 F.3d 94, 100-01 (2d Cir. 2015). "A plaintiff satisfies this requirement if either the unreasonableness of the force used was apparent under the circumstances, or the plaintiff signaled her distress, verbally or otherwise, such that a reasonable officer would have been aware of her pain, or both." *Cugini*, 941 F.3d at 608, 613.

Based upon an application of the *Graham* factors, Plaintiff's claims for excessive force and assault and battery cannot be resolved on summary judgment. The purported outstanding warrant charged Plaintiff with a misdemeanor traffic offense—certainly not a charge severe enough to merit a use of force on its own. *See* McCormick Decl. Ex. A at 3; *Ketcham v. City of Mount Vernon*, 992 F.3d 144, 150 (2d Cir. 2021). Likewise, there is no evidence that Plaintiff posed any threat to the Officers. *See* McCormick Decl. Exs. B, C (use of force reports reflect that Plaintiff "stiffened hands or arms, pulled away" and "pushed away from Officer," but do not otherwise suggest that Plaintiff threatened or attempted to harm the Officers). The only factor that even potentially favors Defendants at this stage is the third—whether the suspect was "actively resisting arrest or attempting to evade arrest by flight." *See Graham*, 490 U.S. at 396. According to the Officers, Plaintiff attempted to evade arrest by holding his arms out of reach to be handcuffed and then attempting to flee. Defs.' 56.1 Statement ¶¶ 6-7; McCormack Dep. at 33:21-34:12, 39:10-21, 33:21-34:12; Sabol Dep. at 33:21-34:7, 34:13-35:18. Plaintiff disputes these accounts—he maintains that he never tried to evade arrest, Pl.'s 56.1 Resp. ¶ 7A; Santiago Dep. at 21:24-22:3, and that the Officers, acting without provocation, threw him to the ground and then punched and kicked him repeatedly, Santiago Dep. at 22:4-8, 23:9-19, 24:12-25:5.

These significantly divergent recitations of the events of March 15, 2019 leave genuine issues of material fact as to whether the Officers used excessive force.

Further, the Court will not dismiss the excessive force and assault and battery claims based on Defendants' argument that Plaintiff sustained only *de minimis* injuries.  *See* Defs.' Mem. at 10 (arguing Plaintiff's "superficial injuries . . . are inconsistent with a claim of excessive force").  The Second Circuit recently noted that it has "never held that a court may grant summary judgment to officers on an excessive force claim merely because the injuries were minor even where the force was unreasonable."  *Ketcham*, 992 F.3d at 150.  Moreover, "courts in the Second Circuit have allowed plaintiffs to pursue excessive force . . . claims even where the injury was not permanent or severe, where the force used was excessive and gratuitous." *Jackson v. City of New York*, 939 F. Supp. 2d 235, 253 (E.D.N.Y. 2013) (collecting cases); *accord Lemmo v. McKoy*, No. 08-cv-4264 (RJD), 2011 WL 843974, at *6 (E.D.N.Y. Mar. 8, 2011) (collecting cases).

The Court is presented with two competing versions of events as to the amount of force used by the Officers and whether such force was justified.  Because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge," *Anderson*, 477 U.S. at 255, Defendants' motion for summary judgment is DENIED as to Plaintiff's excessive force and assault and battery claims.

### E.      Qualified Immunity as to the Individual Defendants

Defendants assert that McCormack and Sabol are entitled to qualified immunity as to Plaintiff's claims for excessive force, false arrest, and malicious prosecution because at a minimum the officers had "arguable probable cause to arrest [P]laintiff and the force they use[d] to subdue Plaintiff was objectively reasonable."  Defs.' Mem. at 12-13.

21

A police officer is entitled to qualified immunity if: "(1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Cerrone v. Brown*, 246 F.3d 194, 199 (2d Cir. 2001) (cleaned up); *accord Tracy v. Freshwater*, 623 F.3d 90, 95-96 (2d Cir. 2010).  A police officer's actions are objectively reasonable "if officers of reasonable competence could disagree on the legality of the defendant[ officer's] actions." *Rohman v. N.Y.C. Transit Auth*., 215 F.3d 208, 216 (2d Cir. 2000) (quotation marks omitted).  Summary judgment on qualified immunity grounds is inappropriate where genuine issues of fact preclude a finding that an officer's actions were objectively reasonable.  *See Chase v. Penney*, No. 20-3234-cv, 2021 WL 4519707, at *2-3 (2d Cir. Oct. 4, 2021) (summary order).

With respect to "arguable probable cause," "[e]ven if probable cause to arrest is ultimately found not to have existed, an arresting officer will still be entitled to qualified immunity from a suit for damages if he can establish that there was 'arguable probable cause' to arrest." *Escalera v. Lunn,* 361 F.3d 737, 743 (2d Cir. 2004).  "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* (quotation marks omitted).

As discussed above, there are questions of fact as to whether the Officers' use of force during the course of Plaintiff's arrest was objectively reasonable, and those questions of fact make it impossible for the Court to determine as a matter of law at summary judgment that the Officers are entitled to qualified immunity as to the excessive force claims.  Similarly, the factual ambiguities that preclude a determination at this stage that the Officers had probable cause to

arrest Plaintiff based on the existence of an outstanding warrant also prevent a finding of

arguable probable cause that would entitle the Officers to qualified immunity.  Whether it was

objectively reasonable for the Officers to believe that probable cause existed based on an

outstanding warrant, and whether officers of reasonable competence could disagree on whether

the probable cause test was met, will depend on an assessment by the finder of fact of what the

Officers here knew about the alleged outstanding warrant for Plaintiff and when they had that

information.  Because those are questions that cannot be assessed by the Court as a matter of

law, the Officers are not entitled to qualified immunity on these claims at this time.  *See Chase*,

2021 WL 4519707, at *2-3.  Defendants' motion for summary judgment on this basis is

DENIED.

**F.       Denial of the Right to a Fair Trial (Claims Eleven and Twelve)**

Plaintiff's eleventh and twelfth causes of actions allege denial of Plaintiff's right to a fair

trial under both New York State law and § 1983.  Am. Compl. ¶¶ 112-25.  To succeed on claims

of denial of the right to a fair trial, a plaintiff must show that an "(1) investigating official (2)

fabricate[d] evidence (3) that is likely to influence a jury's decision, (4) forward[ed] that

information to prosecutors, and (5) the plaintiff suffer[ed] a deprivation of liberty as a result."[12]

*Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012) (summary order); *see also*

---

[12] While Defendants' motion includes one sentence reciting the legal standard that Plaintiff would have to prove that any alleged fabrication of evidence led to a deprivation of liberty, Defendants do not elaborate further on this point in their three-sentence argument in order to prevail on these claims.  *See* Defs.' Mem. at 6-7.  In light of the fact that Plaintiff was in custody for 12 hours following his arrest, and may not have been detained at all at any point after the allegedly fabricated criminal complaint was forwarded to prosecutors, it is not clear that there is an evidentiary basis to support the "deprivation of liberty" element of these claims.  But because Defendants did not expressly raise this argument and Plaintiff therefore did not have an opportunity to respond to the point, the Court does not address the merits of this argument at this time.  Again, the parties should be prepared to discuss this issue further at the next scheduled pretrial conference.

*Delgado v. City of New York*, No. 19-cv-6320 (JPC), 2021 WL 2473817, at *9 (S.D.N.Y. June

17, 2021) (applying same standard to fair trial claims brought under New York State law);

*Fernandez v. City of New York*, 457 F. Supp. 3d 364, 388 (S.D.N.Y. 2020) (same).  "A plaintiff

need not have proceeded to trial to have an actionable § 1983 claim based on the denial of the

right to a fair trial, but rather need only show that the allegedly false information is material,

such that it would 'likely influence a jury's decision[.]'"  *Fowler-Washington v. City of New*

*York*, No. 19-cv-6590 (KAM) (RER), 2023 WL 2390538, at *5 (E.D.N.Y. Mar. 7, 2023)

(quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997); *see also Rodriguez*,

291 F. Supp. 3d at 415 ("It is of no matter that a plaintiff's case is never put before a grand or

trial jury—this claim may be sustained where charges are dismissed before trial.").

      Defendants maintain that Plaintiff's claims fail because he "is unable to point to any

record evidence to corroborate his claim that Officers McCormack and Sabol forwarded

fabricated evidence to the District Attorney's Office."  Defs.' Mem. at 7.  The Court disagrees.

In the record before the Court, McCormack was the arresting officer who signed the criminal

complaint charging Plaintiff with resisting arrest and obstruction of governmental administration.

Raquib Decl. Ex. 1.  In his narrative statement McCormack wrote, in part, that Plaintiff acted

"with intent to prevent officers of the Yonkers Police Department from apprehending him, an

official function, when he pulled his arms forward and away from your deponent in an attempt to

not be handcuffed, refused multiple commands to put his hands behind his back, pushed against

his car and tried to run away, pulled his arms under his body, and used his body weight to

prevent being handcuffed."  *Id.*  McCormack and Sabol testified to this series of events, all of

which Plaintiff denied.  *Compare* McCormack Dep. at 31:13-21, 33:21-34:12, *and* Sabol Dep. at

33:21-34:7, 34:13-35:18, *with* Santiago Dep. at 15:12-17, 16:24-22:3.

Plaintiff's deposition testimony creates a genuine issue of material fact as to whether McCormack fabricated evidence that was likely to influence a jury's decision and forwarded that information to prosecutors.  If a jury were to credit Plaintiff's version of events, that jury reasonably could find that McCormack fabricated the narrative in the criminal complaint. Accordingly, Defendants' motion for summary judgment regarding these claims is DENIED as to McCormack and the City of Yonkers.  As discussed in Section III.C, *supra*, however, Plaintiff has not, come forward with any evidence to demonstrate any personal involvement by Sabol in transmitting any account of Plaintiff's arrest to prosecutors, and therefore Defendants' motion for summary judgment as to the denial of the right to a fair trial claims is GRANTED as to Sabol.

### G.   Failure to Intervene (Claims Sixteen and Seventeen)[13]

Plaintiff also brings claims for failure to intervene against "[t]hose Defendants that were present but did not actively participate in the aforementioned unlawful conduct, observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct, and failed to intervene."  Am. Compl. ¶¶ 151-59.  Because the only individual defendants identified by Plaintiff are McCormack and Sabol, the Court considers these claims only as to those officers and does not consider how the claims theoretically could have applied to

---

[13] It is unclear if "failure to intervene" is a valid cause of action pursuant to New York State law.  *Compare Ashanti v. City of New York*, 180 N.Y.S.3d 889 (Table), *7 (N.Y. Sup. Ct. 2023) ("Plaintiff acknowledges that failure to intervene does not exist under New York State law."), *with Da Mata v. City of New York*, No. 21-cv-155 (KPF), 2023 WL 112449, at *15 n.17 (S.D.N.Y. Jan. 5, 2023) (noting "failure to intervene is analyzed in the same manner under both state and federal law").  But because Defendants have not raised any arguments to this effect, the Court assumes without deciding, an only for purposes of this motion, that this is a valid cause of action under New York State law and reflects the federal standard.  This will be another item for the parties to address at the next scheduled pretrial conference.

any unnamed John/Jane Doe defendants who have not been made part of this case.  *See Da Mata*, 2023 WL 112449, at *15; *see also* Section III.H.5, *infra*.

"Law enforcement officers have an affirmative duty to intervene to prevent their fellow officers from infringing on a citizen's constitutional rights."  *Rodriguez*, 291 F. Supp. 3d at 417.  "An officer can be held liable under § 1983 for 'the preventable harm caused by the actions of the other officers where that officer observes or has reason to know that: (1) excessive force is being used, (2) a citizen has been unjustifiably arrested, or (3) any constitutional violation has been committed by a law enforcement official.'"  *Kayo v. Mertz*, 531 F. Supp. 3d 774, 799 (S.D.N.Y. 2021) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).  "'[F]or liability to attach' for failure to intervene, 'there must have been a realistic opportunity to intervene to prevent the harm from occurring.'"  *Id.* (quoting *Anderson*, 17 F.3d at 557).

Since Plaintiff's claim for excessive force is moving forward, he may also bring failure to intervene claims.  "Although [Sabol and McCormack] cannot be held directly liable for these violations *and* for failure to intervene and stop those alleged violations, [Plaintiff] may proceed with these claims in the alternative."  *Marshall v. Port Auth. of N.Y. & N.J.*, No. 19-cv-2168 (WHP), 2020 WL 5633155, at *8 (S.D.N.Y. Sept. 21, 2020) (emphasis added) (collecting cases); *accord Buchy v. City of White Plains*, No. 14-cv-1806 (VB), 2015 WL 8207492, at *3 (S.D.N.Y. Dec. 7, 2015).  Summary judgment is therefore DENIED as to Plaintiff's failure to intervene claims.

## H.  Summary Judgment is Appropriate Where There is No Evidence to Support Plaintiff's Claims

Plaintiff has adduced no evidence to support any of the additional claims in the Amended Complaint.  Accordingly, as discussed further below, those claims are dismissed.

### 1.    Malicious Abuse of Process (Claims Nine and Ten)

Plaintiff includes claims against Defendants for malicious abuse of process.  Am. Compl.

¶¶ 99-112.  When a plaintiff brings such a claim pursuant to § 1983, courts "turn to state law to

find the elements of the malicious abuse of process claim."  *Cook v. Sheldon*, 41 F.3d 73, 80 (2d

Cir. 1994).  Under New York law,

> a malicious abuse-of-process claim lies against a defendant who (1) employs
> regularly issued legal process to compel performance or forbearance of some act,
> (2) with intent to do harm without excuse o[r] justification, and (3) in order to obtain
> a collateral objective that is outside the legitimate ends of the process.

*Savino*, 331 F.3d at 76 (quotation marks omitted).  As another court is this District explained:

> The crux of a malicious abuse of process claim is the collateral objective element.
> To meet this element, a plaintiff must prove not that defendant acted with an
> improper motive, but rather an improper purpose—that is, he must claim that the
> defendant aimed to achieve a collateral purpose beyond or in addition to his
> criminal prosecution.  For example, tampering with evidence is not considered
> abuse of process because the goal—convicting the defendant—is a legitimate use
> of process.  Fabricating assault charges to save one's job could be abuse of process,
> however, because safeguarding one's own employment lies outside the legitimate
> goal of criminal process.

*Douglas v. City of New York*, 595 F. Supp. 2d 333, 344 (S.D.N.Y. 2009) (cleaned up).

The only "collateral objective" that Plaintiff has alleged is nothing more than that—an

allegation.  Plaintiff cites to the Amended Complaint in support of his theory that "Defendant

officers initiated a criminal prosecution against Plaintiff to be awarded overtime and [increase]

their arrest count."  Pl.'s Mem. at 33.  But the allegations in a complaint are not sufficient to

create an issue of fact to defeat summary judgment.  *See Johnson v. Killian*, 680 F.3d 234, 236

(2d Cir. 2012) (*per curiam*) ("[C]onclusory statements or mere allegations [are] not sufficient to

defeat a summary judgment motion." (quotation marks omitted)).  Because Plaintiff has come

forward with nothing other than "conclusory statements or mere allegations" as to any "collateral

objective" sought by Defendants, the motion for summary judgment is GRANTED as to

Plaintiff's malicious abuse of process claims.

### 2.      Denial of Equal Protection (Claims Thirteen and Fourteen)

Plaintiff also asserts claims of equal protection violations under both state and federal law

on the basis that Defendants allegedly discriminated against Plaintiff based on his race, color, or

ethnicity.  Am. Compl. ¶¶ 12544.  The Equal Protection Clause of the Fourteenth Amendment

commands that no state shall "deny to any person within its jurisdiction the equal protection of

the laws."  U.S. Const. amend. XIV, § 1.[14]  At its core, the Equal Protection Clause prohibits the

disparate treatment of similarly situated individuals.  *City of Cleburne v. Cleburne Living Ctr.*,

473 U.S. 432, 439 (1985); *Plyler v. Doe*, 457 U.S. 202, 216 (1982).  Further,

> [t]o establish a violation of the Equal Protection Clause based on selective
> enforcement, a plaintiff must ordinarily show the following: (1) that the person,
> compared with others similarly situated, was selectively treated; and (2) that such
> selective treatment was based on impermissible considerations such as race,
> religion, intent to inhibit or punish the exercise of constitutional rights, or malicious
> or bad faith intent to injure a person.

*Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004) (cleaned up).

Plaintiff offers no evidence of any discriminatory animus on the part of any of the

Defendants, nor does he provide any evidence that he was subjected to disparate treatment on the

basis of his race.  Plaintiff asserts in opposition to the motion for summary judgment that he "has

pleaded viable equal protection claims, based on upon both his impermissible selective

treatment, in addition to his allegation of unlawful discrimination motivated by the

discriminatory animus of [D]efendants."  Pl.'s Mem. at 36.  But at summary judgment, Plaintiff

---

[14] Article I, Section 11 of the New York State Constitution likewise provides that "[n]o person shall be denied the equal protection of the laws of this state or any subdivision thereof." N.Y. Const. art. I, § 11.  In his opposition, Plaintiff does not distinguish between his federal and state equal protection claims.  *See* Pl.'s Mem. at 34-36.

must do more than rely on his pleadings—he must put forth evidence. *See Johnson*, 680 F.3d at 236; *Marshall*, 2020 WL 5633155, at *9. In light of Plaintiffs' failure to do so here, Defendants' motion for summary judgment is GRANTED as to Plaintiff's equal protection claims.

### 3.      Conspiracy to Interfere with Civil Rights and Failure to Prevent Conspiracy (Claim Fifteen)

Plaintiff's fifteenth claim, brought only against the individual defendants, is for conspiracy to interfere with civil rights and failure to prevent such a conspiracy. Am. Compl. ¶¶ 144-51. To establish a claim under 42 U.S.C. § 1985 for conspiracy to interfere with civil rights, a plaintiff must show:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.

*Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993). The conspiracy is actionable only if it involves "some racial, or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 829 (1983) (quotation marks omitted). Additionally, "[42 U.S.C.] § 1986 provides a cause of action against anyone who having knowledge that any of the wrongs conspired to be done and mentioned in [§] 1985 are about to be committed and having power to prevent or aid, neglects to do so." *Mian*, 7 F.3d at 1088 (quotation marks omitted); *accord Walsh v. City of New York*, No. 19-cv-9238 (AT), 2021 WL 1226585, at *8 (S.D.N.Y. Mar. 31, 2021). "Thus, a § 1986 claim must be predicated upon a valid § 1985 claim." *Mian*, 7 F.3d at 1088.

Defendants argue that dismissal is warranted on the ground that Plaintiff failed to produce any evidence of conduct rising to the level of a conspiracy. Defs.' Mem. at 8. The

Court agrees that no reasonable jury could conclude that the Officers engaged in a civil rights conspiracy.  Plaintiff has not "provide[d] [any] factual basis supporting a meeting of the minds, such that [D]efendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (quotation marks omitted).  Additionally, Plaintiff offers only conclusory allegations that the events underlying this action involved discriminatory animus.  *See* Pl.'s Mem. at 36-37.  Because there is no evidence of racial or other class-based animus anywhere in the record, Defendants are entitled to summary judgment on Plaintiff's § 1985 claim.  And since a claim for failure to prevent a conspiracy pursuant to § 1986 "must be predicated upon a valid § 1985 claim," *Mian*, 7.3d at 1088, summary judgment is warranted as to Plaintiff's § 1986 claim as well, *see Marshall*, 2020 WL 5633155, at *10. Accordingly, Defendants' motion for summary judgment is GRANTED as to Plaintiff's conspiracy claims.

### 4.    Negligent Hiring, Training, Retention, and Supervision (Claim Eighteen)

Finally, Plaintiff asserts that the City of Yonkers acted negligently in exercising its duty of care to "hire, train, retain and supervise its employee Defendants."  Am. Compl. ¶¶ 159-66. Under New York law, a claim for negligent hiring, training, supervision, or retention requires a plaintiff to show, in addition to the standard elements of negligence:

> (1) that the tort-feasor and the defendant were in an employee-employer relationship, (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence, and (3) that the tort was committed on the employer's premises or with the employer's chattels.

*Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (cleaned up); *accord Tsesarskaya v. City of New York*, 843 F. Supp. 2d 446, 463-64 (S.D.N.Y. 2012).

Plaintiff has not submitted any evidence regarding the City of Yonkers's hiring, training, supervision, or retention policies, and his only argument as to this claim is that "Sabol and

30

McCormack had specialized training to effect arrests upon arrestees attempting to resist but were dragged ten (10) feet, and regardless of who initiated that contact for whatever reason, Plaintiff suffered physical injuries as a result." *See* Pl.'s Mem. at 37-38.  The assertion that the Officers received some training, combined with a recitation of Plaintiff's version of events regarding the March 15, 2019 arrest, does not create an issue of fact as to whether the City of Yonkers knew or should have known of any purported propensity for these Officers to engage in the alleged conduct.  *See, e.g.*, *White v. City of New York*, No. 17-cv-2404 (JPO), 2019 WL 1428438, at *11 (S.D.N.Y. Mar. 29, 2019) (granting summary judgment to defendants where plaintiff "has not submitted any evidence to show that [defendants] 'knew or should have known' of their employees' propensity for the conduct in this case"); *Cabrera v. City of New York*, No. 16-cv-1098 (GBD), 2017 WL 6040011, at *10 (S.D.N.Y. Dec. 4, 2017) (granting summary judgment to defendants where "Plaintiff has failed to allege any facts from which it can be inferred, much less demonstrated, that the City of New York knew or should have known of the defendant officers' propensities to act in the manner alleged, namely falsely arresting someone and then doctoring evidence to cover up the wrongfulness of their actions"); *Henry-Lee v. City of New York*, 746 F. Supp. 2d 546, 566 (S.D.N.Y. 2010) (granting summary judgment where plaintiff failed to present evidence of training, hiring, retention, or supervision policies of the municipality, save for "some isolated deposition questions regarding past instances of misconduct").  Accordingly, Defendants' motion for summary judgment as to Plaintiff's claim for negligent hiring, training, retention, and supervision is GRANTED.

**5.     The John/Jane Doe Defendants**

Plaintiff names 10 John/Jane Doe defendants in his Amended Complaint, *see* Am. Compl. ¶¶ 15-16, but has made no attempt to further amend the operative complaint to include

the real identities of those individuals.  "As discovery has now closed, the proper course is to dismiss the John[/Jane] Doe Defendants without prejudice."  *Scott v. City of Mount Vernon*, No. 14-cv-4441 (KMK), 2017 WL 1194490, at *33 (S.D.N.Y. Mar. 30, 2017) (collecting cases); *accord Tarrant v. City of Mount Vernon*, No. 20-cv-9004 (PMH), 2022 WL 17070062, at *3 (S.D.N.Y. Nov. 17, 2022) (dismissing unidentified "Doe" defendants in connection with decision on motion for summary judgment where plaintiff "failed to identify or serve . . . the John Doe Defendants," "offers no evidence regarding the identity of these Defendants in his Opposition," and "discovery in this action has now closed").  Accordingly, all claims against the John/Jane Doe defendants are dismissed without prejudice.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (ECF No. 26) is GRANTED IN PART and DENIED IN PART.  Claims nine, ten, thirteen, fourteen, fifteen, and eighteen are dismissed with prejudice; claims seven, eight, eleven, and twelve are dismissed with respect to Defendant Sabol only, and will proceed as to the remaining Defendants; claims one, two, three, four, five, six, sixteen, and seventeen will proceed to trial as to all Defendants specified for those claims.

An in-person status conference is hereby scheduled for April 20, 2023 at 10:00 a.m. in a courtroom to be determined in the White Plains federal courthouse.  In advance of the

conference, counsel must meet and confer to discuss potential trial dates between August and

October 2023.

Dated: March 27, 2023
      White Plains, New York

                                        **SO ORDERED.**

                                        _____
                                        ANDREW E. KRAUSE
                                        United States Magistrate Judge